Judge Undeawooh,
delivered the opinion of the court.
This is an action of covenant instituted by the heirs of Lewis against Bedell’s heirs, lo recover upon a covenant of their ancestor £56, and interest thereon, which he agreed to pay, in case a certain tract of land “should be lost by any prior or better claim.” The suit was commenced in May, 1821. In August, 1822, it was dismissed, and a judgment rendered in favor of the defendants for their costs. On the 11th of September, 1822, the heirs of Lewis sued out another writ against the heirs of Bedell; but whether it was founded on the old declaration re-filed, does-not appear. We suppose it was so intended. At the appearance term in November, the record states that the defendants filed their “first and second pleas.” They are then given in hmc verba. The first, is covenants performed; the second, fully administered by Bedell’s administrators, and nothing by discent on the part of his heirs. At the August term, 1823, the record states “that the defendants filed their first and second pleas, and the plaintiffs their replication, and the defendants their joinder, and the cause is continued, which pleas and replications, are as follows; “then a plea is given., which admits the descent of one hundred acres of land to the heirs of Bedell, and avers, that it had been sold to-satisfy a demand, arising from a contract of their ancestor, and that no other estate had come to them by descent. To this plea, a replication was filed, denying that the one hundred acres of land was sold, as averred in the plea, and averring that other lands and tenements had descended to the defendants. To this replication, there was a demurrer and joinder. The replication denominates the plea, the third plea. At the April term, 1825, the record states that the defendants filed an additional plea, and the plaintiffs filed their replication thereto, and the defendants filed their demurrer, which is sustained to the plaintiffs replication, and the plaintiffs their joinder thereto, and on motion of the *563 plaintiffs, they are permitted to withdraw their joinder in demurrer, and leave is given them to amend their declaration by inserting September instead of November, the date of the writing declared upon.” The cause was then continued.
Then follows the additional plea, replication, demurrer and joinder. The plea and replication seems to be in substance, if not literally, the same which were filed at the August term, 1823. At the April term, 1826, the defendants filed a demurrer to the declartion. The plaintiffs joined in demurrer, and upon argument, it was overruled. The defendants asked leave to withdraw their demurrer to the decalration, and to file two pleas, one denying any thing by descent and the other similar to that already mentioned as the third plea, admitting the descent of one hundred acres of land and averring that it had been sold, &c. The court refused to let the defendants file these pleas, and they excepted. The record then states, that the “defendants filed their first and second pleas, and the plaintiffs similiter, whereupon came a jury, &c.” We are not told whether the demurrer was withdrawn or not, when the court would not suffer the plea tendered to be filed. But as the defendants asked leave to withdraw their demurrer and file two pleas, which were rejected, and two others were afterwards filed and acted upon, we suppose that the demurrer was withdrawn to the declaration. From the language of the record last quoted, the reader would conclude, that the pleas here meant by the first and second, were the same already mentioned under these denominations; but not so. Instead of covenants performed and fully administered,. &c., the first is, that there was not an eviction by title paramount, and the second a plea to the same effect by the infant defendants, and then follows a replication to the defendants second plea, averring that lands and tenements descended to the heirs, and that the administrators had not fully administered. This replication would apply to the plea first filed, and denominated the second plea, but it has not the least application to the matter of the plea last filed as the second plea. We have been thus particular in relation to the various orders concerning the pleadings for the purpose of shewing the confusion into which the parties seem to have gotten, and which might have *564 been avoided by proper attention. This, together with the unintelligible manner in which the record is made out has obscured the issues which were tried by the jury, so that we cannot tell with certainty what they were.
In suit vs the loirs alone, on an obligation, in winch they are expressly bound, return of“no inhabitant of the county,” will authorize an abatement as to part of the heirs, and a judgment against the others. Joining administrators does not alter the rule.
The plaintiffs, upon a return of no inhabitants of the county, abated the proof as to part of the heirs of Bedell, and obtained a verdict and judgment against the others. The judgment against those heirs upon whom process was served, rendered their estates liable, without regard to the property or its value which had descended to them from their ancestor.
The first question for consideration,is, was it legal to-ábate as to part of the heir s, arid take judgment against the others? The obligation on which the suit is founded, binds the heirs of Bedell upon its face. They might have been sued upon it, independent of the statute which authorizes a suit jointly against the administrators and heirs. If the heirs had been sued separately from the administrators, Die principles recognized in the cases of Sneed vs. Weister, &c. II Marsh. 277, and Jouitt vs. Simpson, Ibid, 371, would have authorized an abatement as to those in whom the process had not been served, and a judgment against the rest. We-cannot perceive, that joining the administrators with the heirs in the suit, should have the effect to prevent the. abatement upon the return of ‘tno inhabitant.” Making the administrator a party to the suit, is advantageous to the heirs, as by it the personal estate of the de-deased in the hands of the administrator, is thereby ren-. dered liable in the first instance.
The policy of the statutes authorizing an abatement upon a return of “no inhabitant'1'1 embraces heirs as well as joint obligors. The case of Sneed vs. Weister, &c. was a parol contract. The present is stronger, because it is in writing, and obligatory on the heirs. It is in fact, their covenant by operation of law, so far as they have estate by descent from their ancestor, the original obligor. If the heirs were not expressly bound by the. covenant, they could not be sued at all by the principles pf the common law, and in such a case, it would be indispensable in attempting to make them liable under our statute to unite the personal representative of their an- *565 ccstor as a defendant with them, as was decided in Lawrence’s heirs against Turkman; III Bibb, 23, and Lawrence’s heirs vs. Hayden, IV Bibb, 229. Whether it would make any difference in relation to the abatement, if this were a case in which the heirs were not expressly bound by the covenant, need not now be decided; the case of Morgan’s executor vs. Morgan, II Bibb, 388, so far as the court adjudicated upon the questions presented by the assignment of errors, rather supports the view of this case which we have taken; but there is an obit r dictum in that decision, which says, “that it was error to take a judgment against part of the heirs and devisees only; yet as it is not assigned, we cannot notice it.”
To suit vs heirs, all of the heirs must-, be made defendants..
The distinction between a covenant binding upon the heirs and one not so binding, is not taken in that case. No reasons are given for the opinion advanced, that it was error to take judgment against a part only.
It is certainly true, that if heirs are sued, all must be made defendants to the same action and if any one is omitled it is good cause for plea in abatement. We also concede, that if the whole are before the court by the service of process, it would be erroneous to permit theplaintilf to discontinue as to one, and take judgment against the rest. The reasoning of the Chief Justice in the case of Shields vs. Perkins, II Bibb, 229, relative to the liabilities of joint obligors to each other, and the dangers likely to result from permit!ing a discontinuance as to one, and judgment against the others, is applicable to heirs, but these reasons do not extend to cases where, from the situation of the parties, in relation to. their residence, our statutes authorize an abatement by the return of the officer. In cases of this kind, although it is necessary to sue all, still a judgment may be correctly rendered against part, if this doctrine be not correct, it might amount to a denial of justice, where one of the heirs lived out of the state, and where he had no property here, by attaching which, his appearance could be forced.
Were there no other question, but that growing out of the abatement, we should affirm the judgment. But there are others for which it must be reversed. Without endeavoring to find, in the obscurity which envek *566 opes the pleadings, the points put in issue; it is sufficient to say, that if the issue was nothing by descant oil the part of the heirs, from any tiling exhibited in the reco d, the jury should have fopnd for them. There is no evidence, that any estate had descended to them.
Heir is not liable beyond the value of the estate descended.
Heifeannot', by failure to plead or make-defence, or by any plea, which he may plead, be charged beyond the estate descended.
Where alien-ations have been made by the heir, the value of the estate descended shoud be asses ed, and judgment given against him not exceeding that value.
If the issue ivas upon the legality of the eviction by title paramount, aii(] the proof justified a finding upon that issue in favor of the plaintiffs, then the judgment has been erroneously entered.
The heir is not liable beyond the value of the estate descended. But, as the law was settled in England, in order that he should be no further liable, it was necessary for him to confess the action and show the certainty of assets. By doing so, the judgment was rendered against the assets descended, specially, Bac. Abr. Tide, Heir and Ancestor,letter H. If the heir denied assets or plead other matter, which implied that he had assets and the plea aauis found against him, the debt became his mvn, and the plaintiff was entitled to a general judgment, and to sue out the like execution against him as on a judgment of his own; see Fisher’s heirs vs. Kay, II Bibb, 436, and authorities there referred to. Thus stood the law, until the passage of the statute of January, 31, 1811,(1 Dig. 534.)
This act which extends to heirs, exonerates them from all liability beyond the value of assets descended. They cannot be charged more, on account of having faded to plead or make defence on account of any pies, or pleas, which they have or may plead. In this case, the- jury did not find the value of the assets descended. There was no evidence which enabled them to do it-The verdict and judgment were general against the. heirs, and thus they may be charged in direct violation, of the statute, with a greater amount than the value of the assets descended on account of a plea which they have plead, or for a failure to plead.. The judgment in this respect is palpably erroneous.
At common law, if the heir had alienated the estate descended before the institution of the suit, he could not be reached. This injustice was obviated by the 3 and 4, W and M, chap. 14, which provided, for an en-quiry into the value of such estate, so descended and alienated. As our law: now stands in relation to the *567 Responsibility of the heir, it is believed that where alien-ations have been made, the value of the estale descended, should be assessed, and judgment given against him, not exceeding that value, and it alienations have not been made, and the heir fails to plead, or pleads and his pleas are not sustained, or confesses the action and shows the certainty of assets, (hat judgment should then be rendered, charging the assets; see Leather’s Representatives vs. McGlesson, III Mon. 223. Neither of those courses seem to have been taken. But were we to concede that the juogment had been properly rendered, we should still be of opinion that the verdict was erroneous; because the proof was insullicient to show an eviction by title paramount.' It seems that an action of ejectment was instituted, to which Lewis’ heirs entered themselves defendants, by C. C. and W. S. Stewart, as lessors of the plaintiff, who succeeded on the trial, in recovering the land. -Bedell’s heirs were notified by the defendants of the pendency of this action, and advised to assist in defending it, and required to maintain and support the title of the defendants*
Infant cannot* without aid of a guardian ad litem. defend a suit institu* ted against him.
This notice was served on an infant, one of Bedell’s heirs. In proof of the allegation of eviction by paramount title, the plaintiff in the present case, only gave in evidence, the judgment in the action of ejectment, and the notice to Bedell’s heirs executed as above. However ^sufficient the evidence might be to sustain the issue for the plaintiffs, as against the adult heirs of Be-dell, it was insufficient to do it, so far as the infant was concerned. The infant was not competent to act in legal estimation.
An infant cannot, without the aid of a guardian ad litem defend a suit instituted against him or her personally, much less can an infant, upon notice served in pais go forward and defend a suit instituted against others. The infant’s time and services generally belong, and are subject to the control of a parent, master or guardian; to require of an infant by notice, the performance of an act incompatible with the duty, owing to the parent, &c. would be requiring the infant to decide between the discharge of apparently conflicting duties. He has not during his minority, sufficient legal discretion to decide, or if he had, and were to determine to defend the law suit, his attempts to defend, would be ridiculous in ma *568 ny cases, if left to himself. What could an infant of’ ten years do in defending an action of ejectment?
Service of no-tic'e upon an infant,'to defend ari’a'ction •of ejectment, is a nullity. Notice to the adult heirs to defend an action of eject-, ment, will not 'bind the in.fant heirs.
Sanders, for plaintiffs; Mills, Brown, and McConnell, for defendants.
We regard the service of notice upon the infant in this case, as a nullity. There was no evidence, therefore, conducing to show a paramount title, which would operate against the infant defendant. It may be said, that notice to the adult heirs should bind the infant. Not so. They may be negligent, they may be insolvent, and care not. Considering the favorable attention paid by courts of justice, to the rights of infants, because of their disability, they should not be subjected to unfavorable inferences or to estoppels founded on the conduct of those, over-whom they have no control. It is much safer to require those setting up demands agains: them, to make out a clear case, without resorting to such inferences or quasi estoppels. .
We think the declaration good. Without protracting this opinion, what has been said is deemed sufficient to show the principal enors committed by the circuit court. Upon the return of the cause,it will be prope,’ to re-commence the pleading with the declaration, so that, thereafter, the cause may be exhibited in an intelligible shape, and it would be highly necessary to strip the record of the many irrelevant matters it now contains. The proceedings in the suit, which was dismissed, and the several subpoenas duces tecum are so mucd. irrelevant trash thrown into the present record, only serving to swell its bulk. For the defective manner in which the record has been made out, it must be condemned.
Judgment reversed with costs, and cause remanded, for new proceedings, not incompatible herewith.